UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLY RUCKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16-CV-10506 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| DONNA FASANO, ) | |
| HARD KNOCK BOOKS, and ) | |
| AMAZON.COM, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Defendants Amazon.com and Donna Fasano have moved for summary judgment in this copyright infringement action. The court has jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338. Neither personal jurisdiction nor venue is disputed. Because, applying the local rules for summary judgment motions, plaintiff has failed to properly contest most of defendants' statement of material undisputed facts ("SMUF"), summary judgment must be granted in defendants' favor.

**I. SUMMARY JUDGMENT STANDARD**

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (quotation

1

omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor" (citations and quotations omitted)). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## II. ANALYSIS

Proving infringement requires proof of (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012). "Proof of copying is crucial to any claim of copyright infringement because no matter how similar the two works may be (even to the point of identity), if the defendant did not copy the accused work, there is no infringement." *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984) (citing *Arnstein v. Edward B. Marks Music Corp.,* 82 F.2d 275 (2d Cir. 1936), *motion to set aside decree denied*, 86 F.2d 715 (2d Cir. 1936)). "However, because direct evidence of copying is rarely available, the plaintiff can rely on circumstantial evidence to prove this essential element, and the most important component of this sort of circumstantial evidence is proof of access." *Id.*, citing 3 Nimmer, *Copyright* §13.02 at 13-9 (1983). In the absence of evidence of access, an inference of access may still be established "by proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Id.*

Copyright does not protect ideas, but only the expression of ideas. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996). The difference between an idea and its expression is "elusive." *Id.* at 588. "Professor Chafee . . . defined the boundary between idea and expression, stating that

'protection covers the pattern of the work . . . the sequence of events and the development of the interplay of characters.'" *Id.* (quoting Zechariah Chafee, *Reflections on the Law of Copyright*, 45 Colum. L. Rev. 503, 513 (1945) (second ellipsis in original)).

**A. Facts**

The court begins with what defendants have asserted and plaintiff admits. Plaintiff admits that defendant Fasano is an award-winning author of more than forty romance and women's fiction books. (Resp. to Statement of Material Undisputed Fact [hereinafter "RSMUF"] ¶ 6, ECF No. 35-5.) Plaintiff admits paragraphs 27–32 and 36–60 of defendants' SMUF. These admissions establish as undisputed that plaintiff Rucker *alleges* that she began writing her book, *The Promise of a Virgin*, in late summer or early fall of 2010; that she *alleges* she had completed a synopsis and first chapter by November 2010; that the basic plot of the book is as summarized by defendants at paragraph 30 of their SMUF (ECF No. 31); that "Rucker submitted *The Promise of a Virgin* to a 2010 contest sponsored by Harlequin Enterprising, [sic] Limited" ("Harlequin"), a publisher; and that Harlequin rejected the entry as not strong enough in January 2011. (*See also* 1st Am. Compl. ¶¶ 10–11, ECF No. 9.) Plaintiff further admits that she purchased Fasano's *Reclaim My Heart* from Amazon in late 2013, and that upon buying *Reclaim My Heart*, she claims that she noticed several similarities to *The Promise of a Virgin* in the elements of the plot. The similar elements and some differences among the elements are set forth in defendants' SMUF and are admitted by plaintiff. (*See* ECF No. 35-5 ¶¶ 17–26.) While what plaintiff *alleges* is not ordinarily dispositive, in this case it is critical that plaintiff claims to have started her book only in the early fall of 2010, and only in 2010 did she submit her first chapter and synopsis to Harlequin. As defendants' SMUF, which plaintiff does not effectively

3

contest, establishes, Fasano's book was written and completed (with the exception of minor changes) long before Rucker ever started on hers.

Plaintiff Rucker has submitted a sworn declaration (ECF No. 35-1) that provides factual support for her allegation that she began writing *The Promise of a Virgin* "[s]ometime in the second half of 2010." (Rucker Decl. ¶ 5.) She avers that she submitted her work to a Harlequin contest in November 2010. (*Id.*) She first discovered *Reclaim My Heart* in November 2013. (*Id.* ¶ 6.)

In most of her RSMUF (specifically, ¶¶ 7–13, 15–26, and 33–35), Rucker attempts a denial, but her denials are ineffective under this court's rules applicable to summary judgment motions. What she says, repeatedly, is: "Ms. Rucker is without knowledge or belief to the truth of the matter asserted. Alternatively, denied." (*E.g.*, ECF No. 35-5 ¶ 7.) In this circuit, it is well-established that such assertions are inadequate as denials of defendants' Rule 56.1(b)(3) statement and are to be construed as admissions. As stated in *Hisense USA Corp. v. Central Transport, LLC*, No. 14 C 7485, 2015 WL 4692460, *1 (N.D. Ill. Aug. 6, 2015), because these responses attempt to deny defendants' SMUF without any citation to the record to establish a basis for the denial, they are improper and constitute an admission of defendants' SMUF. *See also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material"); *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission."). Considering these inadequate denials as admissions, as the court must, what has plaintiff admitted?

4

Plaintiff has admitted that Fasano began writing what is now *Reclaim My Heart* (originally entitled *For the Sake of their Son*) in 2004. Fasano's agent, Evan Marshall, sent a proposal for the book to Tara Gavin, a Harlequin editor, sometime in 2006. Gavin told Fasano in October 2006 that she liked the script but requested some changes. Fasano made the requested revisions and renamed the book *Hindsight*. Marshall sent the revised proposal for *Hindsight* to Gavin on November 22, 2006. Pursuant to an agreement dated January 30, 2007, Harlequin agreed to publish *Hindsight*. Fasano completed the manuscript of *Hindsight* and sent it to Gavin in June 2007. However, Harlequin decided not to publish the book and terminated the agreement in 2008. In 2013, *Reclaim My Heart* was published and sold on Amazon.com.

After the 2008 termination of the agreement, Fasano did not work with Harlequin again. Fasano has never judged a Harlequin writing contest. Nor did Fasano ever receive a copy of *The Promise of a Virgin* from Harlequin before she wrote the story that became *Reclaim My Heart*. (Fasano Decl., Ex.1 to SMUF, ECF No. 31-1.)

Defendant's SMUF also deals with the issue of what changes Fasano made in her manuscript after Harlequin rejected it and before Amazon published it. The period of time involved here is 2008 until 2013, the period during which Rucker wrote her chapter and synopsis and submitted it to Harlequin. Fasano admits making changes, albeit minor ones, in her manuscript after it was rejected by Harlequin in 2008 and published by Amazon.com in 2013. The relevant paragraphs in defendants' SMUF are numbers 17–26. Rucker has ineffectively denied these paragraphs, so they are deemed admitted. They establish that *Reclaim My Heart,* the novel published by Fasano on Amazon.com, and *Hindsight*, the version of the novel written for Harlequin in 2007, have the same characters, plots, settings, and sequence of events. (¶ 17.) They have the same opening scene, in which the heroine, Tyne, arrives at a police station to pick

up her son, Zach, after he is caught spraying graffiti on the school gym. (¶ 18.) In both books, Tyne has not seen Zach's father, Lucas, since she was a teenager because her father had bribed Lucas, who is half Native American, to stay away from his family. (¶ 19.) In both books, Tyne finds Lucas, now an attorney, and asks him to represent Zach in juvenile court. (¶ 20.) In both books, in the years before Tyne reconnects with Lucas, Tyne has married someone else, who died when Zach was young, and has become engaged to another man. (¶ 21.) In both books, when the judge orders Lucas to take Zach to the Native American community where he grew up, Tyne accompanies Lucas and Zach, breaks off her engagement and rekindles her romance with Lucas. (¶ 22.) The hero's name in *Hindsight* is Lucas Silver Fox. In *Reclaim My Heart*, it is Lucas Silver Hawk. (¶ 23.) The books differ in that *Reclaim My Heart* includes two intimate scenes between the protagonists and two scenes discussing tattoos. (¶ 24.) The two books have minor wording differences. (¶ 25.) The details of the scenes differ slightly as the examples set forth indicate. (*See id.* ¶ 26.) Besides admitting these facts, plaintiff has not submitted her own comparison of 2008's *Hindsight* and 2013's *Reclaim My Heart*, and has not in any way suggested that defendants have not adequately described the modest differences between these versions. Nor has the court found any reason to view the changes from 2008 to 2013 as more significant than the minor changes defendants describe.

## B. No Inference of Copying

To the extent that Fasano's work was complete before Rucker began writing hers, plaintiff's case fails because "it is impossible to *copy* something that does not exist." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002). But besides the problem of chronology, there is also a problem of access. The undisputed facts make clear that Rucker's only theory of access is incorrect, since Fasano's relationship with Harlequin ended two years before Rucker

submitted her chapter and synopsis to Harlequin and Fasano never judged a Harlequin contest. (*See* SMUF ¶¶ 15, 27–31, 33–34.) But even in the absence of evidence of access, an inference of access may still be established "by proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle*, 741 F.2d at 901; *see also Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1100 (7th Cir. 2017), *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013). But for the admitted fact that Fasano revised her manuscript after the termination of her agreement with Harlequin in 2008, the admitted chronology would make comparing the two authors' works unnecessary, but out of an abundance of caution, given defendants' admission of revisions during the 2008–13 period, the court has made a brief comparison of the works and finds the "striking similarity" test unsatisfied.

      These two novels have many details in common. As far as the court can assess, many of the details are fanciful elements, not *scenes a faire* that are essential to the genre. Of those that are essential or expected elements of a romance novel, one could list two teenaged lovers separated by racial differences and bigoted parents, an illegitimate child as the product of their teenage romance, the descriptions of the heroines as white, blond-haired and blue-eyed, the heroines' wealthy and prejudiced parents, the years of the protagonists' separation, and the reunion of the hero and heroine years later when they find love again.

      But beyond those similarities are others which seem fanciful and not essential to the genre. For instance, both heroes are half Native American (Kai, the hero of Rucker's work, is Navajo, Lucas is Lenape), both heroes take their young sons back to their reservations, where they have not been for years, to teach them to be responsible, grown-up men. In addition, both works exhibit some differences which appear to be merely variations on similar themes.

7

Rucker's Kai's father was a white man, killed before Kai was born; his mother was a "Navajo princess," also killed in an accident before the events of the story began. Fasano's hero Lucas has a white Amish mother who relinquished him at birth and a Lenape father who died while he was young. Rucker's Kai is raised by his Navajo grandfather, Fasano's Lucas by his Lenape uncle, both elders steeped in the values of their tribal heritage. Both heroes become lawyers who are alienated from their Native American communities until they meet their out-of-wedlock sons and, for their sons' sake, return to their reservations. In the course of reconnecting with their communities, both heroes learn lessons about not overvaluing wealth and material possessions.

Neither hero is aware of his out-of-wedlock son until the events of the novels bring them together. But the circumstances of the meetings of the heroes and their sons are very different: Lucas meets Zach when Tyne retains him as Zach's lawyer; Kai meets Joshua when Sheridan comes to work for him as a private chef, flees leaving her wallet behind and Kai finds Joshua's picture in the wallet. In keeping with Kai the lawyer's wealthy and entitled personality, Kai threatens a custody fight over Joshua before he and Sheridan rekindle their romance. In Fasano's book, the relationship between Zach and Lucas, as well as the rekindling of the relationship between Tyne and Lucas, develops gradually and organically, driven largely by the story and hardly by explicit sexuality, as they return to Wikweko, the Lenape reservation. In Rucker's book, in contrast, the father-son relationship develops more precipitously, as Joshua, watching a scary movie in a luxurious hotel suite arranged for by Kai near the Navajo reservation, screams unexpectedly for "Dad!"

Both heroines leave home in order to keep their babies and both are caterers when they reconnect with their former lovers. In both stories, relatives keep boxes of cards and/or newspaper clippings to keep track of the activities of the sons from whom they've been separated

(Lucas's mother Ruth keeps clippings about Lucas and Jasper keeps Lucas's greeting cards in *Reclaim My Heart*; Sheridan keeps letters she sent to Kai when he was in jail, which her son Joshua finds, in *The Promise of a Virgin*.)[1]

While these similarities are significant, the "feel" of the Fasano book as compared to the Rucker chapter and synopsis is remarkably different, and the difference in "feel" is symptomatic of very different approaches in execution. Most importantly, the way the books deal with romance and sexual attraction, and the way these elements relate to the development of the plot, is dramatically different and overwhelms the two works' similarities.

The difference in the way the two authors' works "feel" is evident in the first chapters. Rucker's first chapter is the only completed portion of her novel the court has, so it takes on great importance in this analysis. Fasano's book starts out in a police department, and soon develops into a courtroom drama. Tyne's fifteen year old son Zach has been arrested for joining with two older boys with criminal records spray-painting graffiti and obscenities on the school gymnasium. Being allowed to take Zach home but given an imminent court date, Tyne makes a decision to seek out the help of her former lover and Zach's father, Lucas, now a successful lawyer. This chapter takes place entirely in a police station. It lays the foundations on which the remainder of the novel will be built. It is neither sexual nor romantic. It is focused entirely on Tyne's predicament as she deals with the issue of Zach's arrest, as well as revealing aspects of Zach's personality. Indeed, while the novel involves the rekindling of the romance between the hero and the heroine, their love affair is not the focus of the story, nor does the novel contain

---

[1] The keeping of clippings and non-delivered letters may well be a common element in Native American stories. A recent interview with the author Alice Walker recounted a story about Dennis Banks, the American Indian activist, who, when at a non-native boarding school, was never given letters sent by his mother. Alice Walker, Taking the Arrow Out of the Heart: Noticing Where You Are, and Who or What is There With You (Nov. 8, 2017), available at https://alumni.stanford.edu/get/page/life-long-learning/webcast/walker?linkId=44501584 (story begins at approximately 6:27 of the video).

more than a few pages of an explicit sexual nature. The focus of the story, rather, is the rediscovery of roots: Tyne in terms of her parents; Lucas in terms of his community; and the exploration of the Lenape community's values as embodied in the highly developed character of the hero's Uncle Jasper and the redemption of the character of the boy, Zach, through his relationship with Uncle Jasper, who connects him with Lenape culture.

Rucker's first chapter is very different. Rucker's work is a story rich in explicit sexual and romantic elements. Rucker's first chapter begins by introducing the reader to Sheridan, the teenaged heroine, and her bigoted mother. The selected quotations set forth here give a sense of the book's tone and feel, a tone and feel completely different from anything in Fasano's work: "*Sheridan!* Don't stay by the pool too long; you don't want to get dark as an Indian . . er . . . I mean *Native American.*" (SMUF Ex. 4-A, Ch. 1, p. 1, ECF No. 31-4.)[2] The emphasis is on Sheridan's privileged existence; her parents' intense attention to her; her father's wealth; the family's "highly pampered, *highly annoying*" Pekinese pups; Sheridan's 18th birthday present from her parents of a Porsche; melodramatic elements such as Sheridan's running over one of the dogs the first time she tries the car; Sheridan's "forbidding [sic] longing" for the pool boy, Kasey Benson; and her obsessive crush on him. Chapter One draws the details of their physical attraction explicitly:

> Sheridan tucked long silken strands of hair behind her ears and parked a pair of sunglasses on a slightly upturned nose, replacing her earphone, lying back on the lounger to continue her sunbathing. With the concealment of the dark lenses, she was once again free to feast her eyes on him. To devour his six-foot-something darkly tanned lusciousness clad all in white in the uniform of the pool-cleaning firm he worked for. The wonderfully short shorts her eyes first lingered on showcased long hair-roughened legs and muscular calves and the short-sleeved polo shirt with the firm's name stitched across the front pocket spelled

---

[2] This citation refers to Exhibit A of the declaration of Ambika Doran.

>out the breadth of wide shoulders that inverted in a perfect triangle
>to a pair of slim lean hips.

(Ex. 4-A, Ch.1, p. 3.)

Rucker's work goes into great detail about Sheridan's physical attraction to the Native American aspects of Kasey (Kai).  There is a suspense element, as the maid, Maria, warns Sheridan to be careful around Kasey.  Rucker describes how Kasey notices Sheridan but tries to avoid her, how beautiful he found her, what an "inferno of heat" she created in him, how she seduces him against his better judgment in the pool that Kasey was hired to clean, and how they made love, virgins that they were, in the pool house.  On the way, there is much explicit sexual description: "A bold hand slithered into his white shorts beneath the concealing water shattering all further coherent thought from both, sliding along the long rigid shaft found there causing it to leap and grow harder still beneath trembling fingers.  Kasey visibly imploded."  (Ex. 4-A, Ch. 1, p. 10.)

Taking Maria's unspoken warning to him seriously, "forgetting *everything* but an untamed raw desire to drive himself deeply inside her—to make her *his—*" (Ex. 4-A, Ch. 1, p. 13), Kasey leaves, then returns later to pick up his supplies and equipment.  He finds Sheridan hosting a party, finds her parents giving her a "shiny new Porsche to drive in style at college," (Ex. 4-A, Ch. 1, p. 15) sees her try the car and run over one of the family's pampered dogs.  She sees Kasey and moves to him.  They begin making love, they get undressed, "he lowered his briefs and his manhood sprang forth making steely clear to her the reality of what lovemaking between a man and a woman entailed."  (Ex. 4-A, Ch.1, p. 18).  They confess their mutual virginity.

At this point, Sheridan's father approaches with a cocked and loaded gun.  He and Kasey struggle over the gun and it goes off, wounding Sheridan's father.  Kasey is arrested.  After three

11

months in jail, the charges are mysteriously dropped and Kasey goes on with his life, eventually attending law school and becoming a successful lawyer. The reader learns in the synopsis that eventually, the heroine's father's wealth crumbles, as he is tried for fraud but dies of a heart attack before a verdict. The important point is this: Fasano's police station and courtroom drama, and Fasano's poolside romance, are not similar at all, let alone strikingly similar.

There is nothing in Fasano's work that is anything like what is found in Rucker's first chapter. One interested in a highly sexualized romance would pick up Rucker's book, not Fasano's. Rucker's novel, according to the synopsis, maintains its rather fevered romantic pitch, with Kai and Sheridan ultimately rediscovering their "incendiary physical connection." The relationship between the protagonists, Kai and Sheridan, is consistently driven by their sexual attraction.

In summary, the uncontested facts demonstrate that Fasano's book was written largely before Rucker even began hers. They establish that Rucker's theory of access, that Fasano encountered her book when she entered a Harlequin contest, is wrong. And they demonstrate that the changes made by Fasano in the 2008–13 timeframe were minor, primarily stylistic changes. Accordingly, on this record, it is clear that plaintiff cannot prevail.[3]

---

[3] Rucker also named Hard Knock Books, which she alleges is an unorganized corporation operating under Delaware law, as a defendant. (1st Am. Compl. ¶ 7, ECF No. 9.) She has provided no evidence that she served Hard Knock Books with the complaint and summons. *See generally* Fed. R. Civ. P. 4. Defendants point out this fact in their summary judgment papers (Mem. Supp. Mot. Summ. J. 2 n.2, ECF No. 30), yet Rucker does not mention Hard Knock Books in her response. For the most part, Rucker does not differentiate among the three named defendants in the infringement allegations made in her First Amended Complaint. (*See* ECF No. 9 ¶ 24.) She does claim that Hard Knock Books represented to Amazon that it had the right to license Reclaim My Heart even though it knew or should have known of the alleged infringement. (*Id.* ¶ 31; *see also id.* ¶¶ 40–41 (alleging that Amazon had an exclusive licensing agreement with hard Knock Books).) To the extent Rucker makes distinct claims against Hard Knock Books, they depend in the first instance on her underlying infringement claim. And because the instant motion for summary judgment notified Rucker that her infringement claim was in jeopardy, the court enters summary judgment for Hard Knock Books as well. *See, e.g.*, *Osler Inst., Inc. v. Forde*, 333 F.3d 832, 836–38 (7th Cir. 2003) (affirming sua sponte grant of summary judgment where losing party had notice that court was considering treating certain issues as dispositive and losing party had an opportunity to respond to dispositive issues); *Hertel v. Miller-Lewis*, 695 F. App'x 957, 961 (7th Cir. 2017) (unpublished) (affirming sua sponte entry of summary judgment dismissing pro se plaintiff's claims because a "district court may grant summary judgment on its

n/a
n/a

### III. CONCLUSION

Defendant's motion for summary judgment (ECF No. 29) is granted. This case is dismissed.

Date: November 21, 2017                              /s/
                                                                    Joan B. Gottschall
                                                                    United States District Judge

---

own initiative, even on grounds not argued by the winning party, so long as the losing party is given notice and a full opportunity to respond" (citing *Pactiv Corp. v. Rupert*, 724 F.3d 999, 1001–02 (7th Cir. 2013))).